The Board of Immigration Appeals in this matter adopted and affirmed the immigration judge's decision in which he found that petitioner was not credible. Now the BIA adopted the IJ's decision in its entirety according to a matter of verbano, is that correct? Yes. So does that mean that the BIA affirmed based on the adverse credibility finding from your perspective? From my perspective, actually the BIA's decision makes no mention to adverse credibility, only the fact that the petitioner did not meet his burden. So the BIA is quite silent on credibility. But what does it mean when they adopt a decision pursuant to verbano? What does that mean? Well, as they put it, it only means they accept the conclusion of the immigration judge, which means the conclusion of the immigration judge is that petitioner was not credible. But besides which, they didn't adopt all of it. They adopted it insofar as he found the Respondent had not satisfied the burden of proof, right? Yes. Which seems to leave out the credibility finding. It seems to leave out the credibility finding, but then they go ahead and say that they are adopting the immigration judge's conclusion as to the other. If you say I adopt something insofar as X, Y, Z, doesn't that mean you adopt X, Y, Z, and that's what you're adopting? It would seem that way. And if we look at it as if they just adopted the immigration judge's conclusion that petitioner did not meet his burden of proof. It's more than a conclusion. Whatever it says there, insofar as that's what they adopted. Yes. The only problem I found with that is I know they didn't specifically talk about credibility, but the immigration judge, in reaching his conclusion that the petitioner did not meet his burden of proof. So the issue as you present it to us is whether the adverse credibility was supported? Yes. All right. That's how you want us to evaluate it? Yes, because I believe the IG's decision is not supported by substantial evidence at all. The adverse credibility that the immigration judge mentions, actually, some of them are not even inconsistent. I'm sorry. The inconsistencies mentioned by the immigration judge, some of them are nonexistent and others are minor if they are inconsistencies. For example, the immigration judge speculates as to why the petitioner did not know the particular name of the group or the militant group that were operating in the area in which he was living in Punjab at that time. Now, there's no way for the immigration judge to know what anyone in the petitioner's position would know living in Punjab. And that's part of the issues raised by the immigration judge. The other matter he also raised is the fact that the petitioner was able to obtain a passport. I'm sorry? The fact that the petitioner was able to obtain a passport from the Indian government within two months of being arrested, detained, and beaten up by the Punjab police. And he thought that diminished his subjective fear for some reason. But that's a game. Well, I think wouldn't the immigration judge say something about his ability to receive a passport from the Indian government contradicted his mother's statement in her letters to the court that the police regularly harassed her and inquired about his whereabouts? Didn't the immigration judge say something like that? No? I'm not sure that's what the immigration judge said. The immigration judge, in his decision, if I may refer briefly to it, talks about the fact that petitioner. I think it's an AR sort of 47 to 50 around there. What is it that you think the – the problem with looking at this as an adverse credibility finding, besides the fact that it isn't what the BIA said, is adverse credibility as to what? He says first that he was beaten in 1984 in this, you know, anti-Sikh riots. Does the IJ say that he didn't believe that? No, the IJ didn't say that. In fact, the IJ says it's plausible because of the background documents in the case, that everyone knows that there was a riot and that lots of Sikhs were killed and harmed. So the IJ didn't quite say he didn't believe that aspect of it. And the IJ didn't actually say he didn't believe that the Respondent was arrested. He just said – well, actually, he did say that because he relies on the discrepancy between the petitioner's testimony and an affidavit submitted from his uncle, with whom he stayed in Punjab, saying – in which he misstated the year that the petitioner was actually arrested. Which kind of looks like a typo, actually. It seemed like a typo, but – Because the rest of the story, which was we didn't see him again after June of 1989, is only consistent with this all happening in June of 1989, not June of 1986. Yes. That's another reason why I didn't think there are any real inconsistencies in this matter. Well, you know, there may be different ways to look at this. One way is to look at it as if we have to review the IJ's credibility finding. Another way to look at it, and I think you have to be prepared to discuss both, but if you looked at it as saying that the BIA adopted the finding that this didn't rise to the level of persecution or demonstrated a well-founded fear, then you have a different issue to consider. How would you answer the BIA's finding that the respondent didn't establish that the incidents he described constituted past persecution? I would say that conclusion flies in the face of the evidence. It just doesn't make any sense. This petitioner was beaten up in 1984 and had to spend almost three months in the hospital. Well, that was part of a mob riot. A mob riot that was sanctioned and in which police officers were complacent and high-ranking members of the government turned their back and let it happen because the prime minister had been assassinated. So if a hundred people were injured in a mob riot, those hundred would be eligible for asylum. Well, if the government... Regardless of who they were. They weren't singled out for anything. They happened to be there. Would that constitute persecution that entitled you to asylum? Well, I think it's precisely because of who they were that changes the issue in this case. The prime minister at the time had been assassinated by a Sikh bodyguard, and Sikhs were targeted. So I think that's a crucial issue, a crucial difference. And according to his story, he was targeted as a Sikh because his hair was cut and his beard was cut and things like that. Yes. Was he... Oh, I'm sorry. Go ahead. No, go ahead. Did the IJ reach the issue of whether the government had rebutted the presumption of future persecution? Actually, the IJ relied on the State Department report submitted by the government to indicate that the Petitioner should be able to relocate to another part of India. He also cited the State Department report indicating that India had appointed a Sikh prime minister, and therefore Petitioner should not have a well-founded fear should he go back to India. Well, the question is whether, as I understood Judge Callahan's question, not having found that there was past persecution, did he ever view the evidence with regard to country conditions through the lens of the burden being on the government? No, he didn't. Because when he talked about, in the alternative, talking about future persecution, he based his decision, he concluded that because he had found the Respondent not credible, he also fails to meet the burden of showing that there's a well-founded fear of future persecution. So he never really placed the burden on the government. But he did mention aspects of the background documents to support his conclusion that Petitioner should be able to return to India. Again, that did not take into account the fact that Petitioner was detained at the airport when he did, in fact, return to India. All right. You've got 15 seconds left for rebuttal, so we'll give you a minute. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm Carmel Morgan on behalf of the Respondent, the U.S. Attorney General. Good morning. You've asked a question about the sort of ---- You know, I think on the Bourbono, can we just go to that from the standpoint? Yes. Because it wasn't really ---- what is your view in terms of if the BIA adopted the IJ's decision in its entirety by citing the matter of Bourbono, I mean, basically the way this case was briefed is it talked in terms of an adverse credibility finding, and that's how it proceeded. But why isn't the BIA's statement that it was adopting the IJ's decision, quote, insofar as he found that the Respondent had not satisfied the burden of proof or request or relief, an implicit limitation on the IJ's decision and rejection of the IJ's adverse credibility finding? So, you know, what are we ---- what's here? Right. I do want to address that as well. As well as what? I mean, that's what you're going to address first, because Judge Kagan asked you to. I think the adverse credibility determination is wrapped up in the decision of the immigration judge to deny relief. It may be wrapped up in the decision of the immigration judge, but it appears fairly clear that the ---- or perhaps it's to me that the BIA was justening itself for that, because not only did it have this insofar thing, but then later it says, Upon review, we find that the Respondent is unable to establish that the incidents he described constituted past persecution. He didn't say, we don't believe they happened. He said they weren't past persecution. They didn't demonstrate a well-founded fear of future persecution or establish that it was more likely than not. He didn't say, I don't ---- we don't believe them. And then they have this footnote where they go on and say other things, but they never say anything about credibility. I think the Court could easily deny the petition for review in this case without looking at the adverse credibility determination, and even assuming that the Petitioner was credible, there's substantial evidence to support the finding that he didn't meet his burden of proof. The incidents that occurred prior to 1991, even if credible, did not constitute it shows by his voluntary return to India in 1991 after his trip to the United States that his professed fear has been undermined since he said that he wished to return to India simply to pursue work in this garment factory. He didn't meet his burden of proof of showing that the incidents he had described prior to 1991 constitute it. All right, but see, what you're talking about is fear of future persecution. You're not talking about whether those incidents constituted past persecution. And let's talk about first whether they constitute past persecution. Because if you have a finding of past persecution, then when you examine future persecution, you do it in light of a presumption that arises as a result of past persecution. And if it's not done, if the future persecution finding isn't made after affording the Petitioner the presumption, then we have to remand to allow the Board to reconsider that after giving the presumption that's required. So it's important to first decide whether there was past persecution or not. I do understand your point, Your Honor. It appears to me that even though the Board didn't explicitly state that they adopted the adverse credibility determination, that that is the case. Are you saying that if they didn't adopt the credibility determination, if they did not adopt that, then you're conceding that there was past persecution? No. Then why don't you answer the question about whether the events, assuming they occurred, constituted past persecution? Specifically the 1984 and 1989 events. Right. Let's forget the 1991 one. There was specific finding in the BIA decision that that wasn't part of persecution. Let's assume that's right. With regard to the 1984 and the 1989 or 1986 incidents that he recites, I think that there simply wasn't a finding if you don't look to adverse credibility, whether those events constituted past persecution or not. Okay. So then we're looking to the question of whether the two things, whether the Board adopted a past, adopted a credibility finding because of what it said about Bono. I saw you nodding, so I guess, I assume that's it. Yes, Your Honor. So this, your case then depends as to past persecution on whether the Board adopted a finding of lack of credibility. I would agree with that, Your Honor. Okay. Now, there's a case, Crotovo, which you cite in your brief, but Petitioner, I don't believe, does cite in his brief. You cite it for another proposition, but Crotovo would seem to indicate where if the BIA limits, you know, doesn't adopt the adverse credibility, that then we look at it differently than if it does. And, you know, to me, when I look at Bourbono, it's saying that, okay, we're adopting it, but there is that limiting language here. So if, but then Petitioner didn't really present the case that way. So, you know, I guess I'm struggling if, you know, do we make it a case that's not presented to us or do, because both of you seem to really proceed on the, with the idea that the Board adopted the adverse credibility and why that wasn't supported. Well, the Board's decision does say that the immigration judge made a finding that the Petitioner didn't meet his burden of proof, and one of the reasons that the immigration judge found that he didn't meet his burden of proof was based on that adverse credibility finding. I'm not sure that they can be separated out, and given the ---- But then you have another sentence, you see. I mean, I just don't know how you can possibly read the Board ruling that way, because they then say, we find that the Respondent is unable to establish that the incidents he described constituted past persecution. They're not saying it didn't happen. So I'm just, I'm having extreme difficulty with the notion that they were resting on the fact that, because if you're talking about a credibility finding, it seems to me that means this didn't happen. He is lying. It didn't happen. And that seems inconsistent with what they actually said. I think you could read it both ways, that unable to establish that the incidents he described constituted past persecution could very well mean that he didn't meet his burden of proof because he was not credible. All right. But if, just for argument's sake, just as a hypothetical, if the panel, and I can't speak, I'm not, but if the panel were to say that the BIA didn't adopt the adverse credibility, then what is your argument in terms of what needs to be done? If the panel decides that the Board didn't adopt the adverse credibility determination, the language with regard to he didn't meet his burden of proof I still think could show that the adverse credibility determination was upheld by the Board, even though it wasn't explicitly stated. I think that's the best argument that the government could put forth. If the panel found that adverse credibility was not decided by the Board and it was not wrapped up in its decision that the burden of proof was not met, it probably would have to be remanded for the past persecution finding. Okay. Thank you. Thank you, Counsel. If there are no further questions, thank you. Do you have any rebuttal? Just one. The notes in the BIA's decision at the bottom regarding what happened in 1991 is well taken. That doesn't go to persecution. That goes to future persecution. In fact, as far as the Petitioner was concerned, this was a writing on the wall of what was to come, since the troubles seemed to have followed him from Punjab to Delhi, and that is why he fled the country 26, 15 days later on. Thank you, Counsel. Thank you. Thank you. Ms. Morgan, I just wanted to say to you I really appreciated your argument because you answered questions that were presented, which is not always the case, and you said what you felt you had to say when you had to do it. Thank you. I really appreciate that.
judges: Reinhardt, Berzon, Callahan